UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-20818-CV-JLK

KAREN TEPPER KEANE,

        Plaintiff,

v.

FEDERAL EXPRESS CORPORATION
and EDUARDO E. UTSET,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendants FEDERAL EXPRESS CORPORATION and EDWARDO UTSETs' Motion for Summary Judgment (DE 22), filed June 5, 2017. The Court has additionally considered Plaintiff's Response (DE 29), filed June 25, 2017, and Defendants' Reply thereto (DE 30), filed July 3, 2017. Upon review of the record and careful consideration, the Court finds that the Defendants' Motion for Summary Judgment should be granted.

### BACKGROUND

This is an employment discrimination case wherein Plaintiff alleges that Defendants discriminated against her because of her race. The following facts are not genuinely disputed:

1

Plaintiff Karen Tepper Keane identifies herself as White/Caucasian and Jewish. DE 27-4 at 8. Plaintiff was employed at Defendant Federal Express ("Fed Ex") for approximately eighteen years prior to being placed under the management of Defendant Eduardo Utset, the Managing Director of the Regional Controller Department in the Latin American and Caribbean Division of Fed Ex. DE 27-1; DE 23-2.

Plaintiff's transfer to Utset's department was announced on November 25, 2013. DE 27-1. On November 26, 2013, Plaintiff met with Utset to express interest in a vacant senior management position. DE 27-1. Notably, Plaintiff had failed to timely apply for the position. Specifically, the position of Senior Manager of Revenue was posted internally for Fed Ex employees on September 13, 2013. Pursuant to the policies set forth in the Fed Ex People Manual, applications remained open to internal candidates for seven calendar days, and closed on September 20, 2013. DE 23-2; DE 22-3 at 221-22. Plaintiff concedes that she did not submit an application at this time. DE 27-4 at 27.[1] When Utset asked Plaintiff why she did not apply for the job when applications were open, Plaintiff responded that she had not been interested in the position at the time it was advertised. Utset stated to Plaintiff that, in any case, Plaintiff would not have been qualified for the senior management position.

Plaintiff had subsequent conversations with Utset in January or February of 2014, where Plaintiff insisted that she was qualified for the senior management position because of her experience in the field of revenue and her Master of Business

---

[1] Two other internal candidates, both Hispanic, applied unsuccessfully. DE 23-2.

2

Administration. DE 27-1. Utset again replied that Plaintiff was not qualified, specifically because she is not a certified public accountant. 27-4 at 16. Therefore, on June 1, 2014, the senior management position was assigned to an external candidate, Deborah Casanova, who is a certified public accountant and has experience as an auditor for a Fed Ex competitor. DE 23-4; DE 23-2.[2]

After failing to obtain the senior management position, Plaintiff approached Human Resources and the Vice President to express that she felt that she should have been promoted over Casanova. However, Plaintiff concedes that she failed to submit an official, written complaint through Fed Ex's Guaranteed Fair Treatment appeal process because she had failed to formally apply for the position in the first place. DE 27-4 at 45. Plaintiff thus remained in her non-senior position as a Manager of Finance.

Notwithstanding that Plaintiff admittedly did not apply for the senior management position, Plaintiff believed that she was not promoted due to racial discrimination. Plaintiff is unable to cite to any direct instances where a racially disparaging remark was made toward her. Instead, Plaintiff directs the Court to a declaration by Paoloa Venerio (Utset's administrative assistant at the time), who witnessed Utset refer to Plaintiff as "the Jew" outside of Plaintiff's presence.

During Plaintiff's tenure as Manager of Finance, she received two documented counselings. According to the Fed Ex People Manual, a documented counseling is not disciplinary in nature. DE 23-3 at 205-06. Rather, a documented counseling involves a

---

[2] Casanova also identifies herself as being of the White/Caucasian race, but Plaintiff disputes this fact. DE 23-4.

counseling session as to acceptable employee conduct, and written documentation of that counseling session. The first documented counseling was given to Plaintiff due to her failure to properly manage a payroll issue. The second documented counseling was given because one of Plaintiff's employees, Betty Harris, was found to be working outside of the appropriate job classification. DE 27-4 at 184. In response to the second documented counseling, Plaintiff informed her senior manager, Casanova, that she had previously attempted to resolve Harris' job misclassification by reporting it to HR as early as 2013, but nothing was done. DE 27-4. Plaintiff's superiors nevertheless insisted that Plaintiff be counseled on the proper steps for placing an employee into the correct job classification, and Harris was thereafter successfully promoted into the proper classification. DE 27-4.

Plaintiff received discipline for the first time in July 2015, when one of her direct employees informed Casanova that Plaintiff had violated Fed Ex's Information Security Policy by providing non-management employees with passwords to the payroll system and Fed Ex bank account. DE 23-4; DE 27-1. More specifically, rather than utilizing the secure backup channels outlined in the policy (such as relying on the Treasury Department or another manager), Plaintiff provided unauthorized employees with confidential information so the system could be accessed while she was on vacation. DE 23-4. Accordingly, consistent with the provisions set forth in the Fed Ex Employee Handbook, on July 13, 2015, Plaintiff was placed on suspended leave with pay pending an investigation of the Information Security violation. DE 23-1.

The investigation revealed several problems with Plaintiff's job performance. First, the investigation confirmed that Plaintiff violated the Information Security Policy by providing passwords and payroll access to unauthorized employees, thereby placing the company at risk for fraud. Second, the investigation showed that Plaintiff allowed an hourly employee to work remotely, without establishing a process to ensure that the hourly employee was properly logging his time. Further, a review of the hourly employee's remote internet usage confirmed that he was not logging his time accurately. Third, interviews with Plaintiff's staff revealed that Plaintiff had exhibited poor leadership. For instance, Plaintiff's employees reported that Plaintiff failed to resolve a discrepancy which resulted in a $52,000 risk to Fed Ex. Employees further complained that Plaintiff showed a lack of interest in implementing the new payroll system, and reported that Plaintiff has used strong and unprofessional language during staff meetings. DE 23-2.

Based on these findings, on August 6, 2015, a decision was made by Plaintiff's superiors to demote Plaintiff from her management position. DE 23-2. Plaintiff was then offered her choice of four alternative, non-management positions. From those choices, Plaintiff chose the new title of Financial Advisor. DE 27-4. Plaintiff appealed the demotion through Fed Ex's Guaranteed Fair Treatment process, but was unsuccessful.

Plaintiff filed the instant suit on March 7, 2016, alleging race discrimination and retaliation. DE 1. Defendant thereafter filed the instant Motion for Summary Judgment on

June 5, 2017. A Response and Reply were timely filed, making this matter ripe for the Court's review.

## LEGAL STANDARD

"Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy[,] and inexpensive determination of every action." *Pace v. Capobianco*, 283 F.3d 1275, 1284 (11th Cir. 2002). Summary judgment is appropriate unless there is a genuine issue of fact for trial. *Agee v. Porter*, 216 F. App'x 837, 840 (11th Cir. 2007). "For factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). In opposing a motion for summary judgment, the nonmoving party "must show specific facts to support that there is a genuine dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not rely on the pleadings, but rather must demonstrate a genuine issue for trial through affidavits, depositions, interrogatory answers, and admissions. *Celotex*, 477 U.S. at 323-24. The existence of a "mere scintilla" of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the finder of fact could reasonably find for

the moving party. *Nat'l Cas. Co. v. Pickens*, 582 F. App'x 839, 840-41 (11th Cir. 2014) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

## DISCUSSION

Plaintiff's two count complaint alleges that Defendants engaged in racial discrimination and retaliation against her under section 1981, Title 42 of the United States Code. Specifically, Plaintiff alleges that Defendants treated White/Hispanic employees more favorably than Plaintiff, who identifies herself as White/Caucasian and Jewish. Plaintiff further alleges that Defendants retaliated against her for reporting racial discrimination against another employee. In its Motion for Summary Judgment, Defendant primarily contends that Plaintiff cannot assert a *prima facie* case for discrimination or retaliation. Plaintiff responds that there are still issues of fact that remain as to both claims. The Court will address each claim in turn.

### 1. Discrimination Claim

Where, as here, a plaintiff presents no direct evidence of discrimination,[3] courts apply the familiar burden-shifting framework set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears an initial burden of establishing a *prima facie* case of discrimination. *See Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). To assert a *prima facie* case for discrimination, a Plaintiff must show that "(1) she is a member of a protected class; (2)

---

[3] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment fails to cite to any materials in the record which could be construed as direct evidence of discrimination. Plaintiff instead cites to circumstantial evidence that Defendant Utset had identified Plaintiff as "the Jew" outside of her presence.

7

she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Should the plaintiff meet her burden, the burden of production then shifts to the employer to proffer a legitimate, non-discriminatory reason for its adverse employment action. *Holland*, 677 F. 3d at 1055. If the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the action. *Id.*

Plaintiff first claims that Defendant discriminated against her due to her race by reprimanding Plaintiff more severely than Hispanic employees. With respect to Plaintiff's documented counselings, however, the record undisputedly shows that documented counselings are not considered discipline under Fed Ex's official People Manual. DE 23-3 at 205-06. Indeed, Plaintiff herself testified that she accepts the terms as defined in the policy manual. Accordingly, Plaintiff cannot assert that the documented counselings constituted an adverse employment action.

Plaintiff did, however, suffer an adverse employment action in the form of suspension and demotion. Therefore, pursuant to the *McDonnell Douglas* framework, the burden now shifts to Defendants to proffer a legitimate, non-discriminatory reason for the adverse employment actions. Defendants have done so, contending that Plaintiff was suspended pending the investigation of a report that she violated the Information Security Policy. Further, Defendants offer the following non-pretextual reasons for demoting

8

Plaintiff: (1) the investigation confirmed that Plaintiff violated Fed Ex's Information Security Policy; (2) Plaintiff allowed an hourly employee to work remotely, resulting in an inaccurate record of that employee's hours; and (3) Plaintiff's direct employees reported that Plaintiff was a poor leader, put the company at financial risk, and acted unprofessionally.

With that, the burden now shifts to Plaintiff to rebut the non-pretexual reasons offered by Defendants. With respect to her Information Security violation, Plaintiff concedes that she violated the Information Security policy, but insists that other employees have violated the policy without reprimand. However, Plaintiff has not bothered to indicate the race of those employees who were allegedly not reprimanded for violating the policy.[4] Without facts showing otherwise, Plaintiff merely relies on a conclusory allegation that she was treated less favorably than others outside of her race. Therefore, Plaintiff fails to demonstrate any facts indicating discrimination, and thus fails to rebut the Information Security violation as a legitimate reason for suspending and ultimately demoting her.

Defendants additionally offered two independent, legitimate reasons for demoting Plaintiff: her mishandling of an hourly employee, and poor leadership. With respect to her mishandling of the hourly employee, Plaintiff argues that she was never informed that she could not allow an hourly employee to work remotely. However, Plaintiff fails to dispute that she did not develop a system to accurately track the hourly employee's time,

---

[4] Notably, however, the Court can glean from the record that CJ Occhipinti (an employee Plaintiff cites as an example of someone who violated the policy without reprimand), is also White/Caucasian.

9

and that as a result the employee misreported his hours. As to Defendants' assertion that she was a poor leader, Plaintiff points out that she has consistently received positive reviews throughout her years at Fed Ex until her transfer to Utset's management team. However, Plaintiff does not present facts to rebut the complaints reported by her most recent employees, namely, that Plaintiff (1) failed to resolve a discrepancy that put Fed Ex in financial risk; (2) showed a lack of interest in implementing a new payroll system; and (3) spoke unprofessionally to her subordinates during her tenure as Manager of Finance. Ultimately, under the undisputed record, Plaintiff cannot demonstrate that her demotion was due to anything other than her poor performance. Plaintiff has therefore failed to meet her burden under the *McDonnell Douglas* framework to rebut Defendants' proffered non-pretextual reasons for demoting her.

The Court next turns to Plaintiff's claim that Fed Ex discriminated against her race by failing to promote her to a senior management position. A plaintiff asserting a discrimination claim for failure to promote must establish that: (1) she is a member of a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected for employment; and (4) the employer continued to seek applicants with Plaintiff's qualifications outside of her protected class. *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002) (citing *McDonnel Douglas*, 411 U.S. at 802).

In the Motion, Defendants contend that Plaintiff fails to satisfy the second and third prongs of a *prima facie* discrimination claim for failure to promote because Plaintiff

did not apply for the position, and the successful candidate was ultimately more qualified. Plaintiff concedes that she did not apply for the position, but insists that she did not apply because Utset told her she was not qualified. However, Plaintiff's assertion is refuted by the undisputed record facts. Indeed, the record shows that Plaintiff did not express interest to Utset until over two months *after* the job posting had closed for internal applicants. The record further confirms that Plaintiff was aware that it is Fed Ex's official policy to post job vacancies for seven days before closing it to internal applicants. The policy moreover states that it is the employee's responsibility to apply for a job vacancy of interest within the allotted seven day period. Here, the senior management position was posted internally on September 13, 2013, and closed on September 20, 2013. It is undisputed that Plaintiff did not submit an application at that time, and did not confront Utset about her interest in the position until November 26, 2013. Moreover, Plaintiff admits in her Declaration that she did not initially apply for the position because she had not been interested in the job as advertised. Accordingly, it is overwhelmingly undisputed that Plaintiff failed to apply for the senior management position. Plaintiff therefore fails to state a *prima facie* claim for discrimination as to the promotion.

Accordingly, Defendants are entitled to summary judgment as to the discrimination claim.

### 2. Retaliation

With respect to claims for retaliation, a plaintiff must prove that: (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and

11

(3) the adverse employment action was causally linked to the statutorily protected activity. *Olmstead v. Taco Bell*, 141 F.3d 1457, 1460 (11th Cir. 1998). Here, Plaintiff alleges that she engaged in a protected action when she sought to place her employee, Betty Harris, into a higher job classification. Plaintiff further claims that she suffered an adverse employment action when she was subsequently issued a documented counseling for having a direct employee working in an improper job classification. As discussed above, a documented counseling is not considered discipline at Fed Ex, and therefore does not constitute an adverse employment action. It is worth noting, however, that Plaintiff also fails to satisfy the first prong of a *prima facie* case for retaliation because Plaintiff did not engage in a statutorily protected activity.

Plaintiff asserts that reporting Harris' job misclassification was a protected activity because Plaintiff believed that Harris was not being promoted due to being an African American woman. However, Plaintiff's efforts to construe her request to promote Betty Harris to a higher job classification as a complaint for racial discrimination are controverted by the undisputed facts in the record. The record shows that Plaintiff never filed any kind of complaint for discrimination with respect to Harris. Furthermore, Plaintiff testified that at the time she sought to reclassify Harris' position, Plaintiff never made any mention whatsoever to Harris about discrimination. Taken in the light most favorable to her, Plaintiff's good faith, subjective belief that Harris' job misclassification was a result of discrimination is not sufficiently probative to support an objectively reasonable inference that Plaintiff engaged in a protected activity. Indeed, Plaintiff's

testimony alludes to no facts which might support her conclusion that Harris was being discriminated against on the basis of her race or gender, and Plaintiff otherwise fails to cite to anything in the record which would support that conclusion. Accordingly, as Plaintiff is unable to show that she was engaged in a protected activity, Plaintiff is unable to establish a *prima facie* case for her claim that she was retaliated against in violation of the Civil Rights Act, and Defendant is entitled to summary judgment on this claim, as well.

## CONCLUSION

It is **ORDERED**, **ADJUDGED**, and **DECREED** that Defendants' Motion for Summary Judgment **(DE 22)**, be, and the same is, hereby **GRANTED**. By separate Order, the Court shall enter Final Judgment on behalf of Defendants and against Plaintiff.

**DONE** and **ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 27th day of July, 2017.

                                                                   JAMES LAWRENCE KING
                                                                   UNITED STATES DISTRICT JUDGE
                                                                   SOUTHERN DISTRICT OF FLORIDA

Cc:   All counsel of record